MAMIE PAULINE PEGRAM TUCKER v. MELVIN CLARENCE
TUCKER, JR.

No. 118

(Filed 26 June 1975)

1. Divorce and Alimony § 24— custody of child — discretion of trial court

The trial judge who has the opportunity to see and hear the parties and the witnesses is vested with broad discretion in cases involving the custody of children, and the welfare of the child is the paramount consideration that must guide the court in exercising this discretion.

2. Divorce and Alimony § 24— custody of child — modification upon substantial change of circumstances

An order pertaining to the custody of the child does not finally determine the rights of parties as to the custody, care and control of a child, and when a substantial change of condition affecting the child's welfare is properly established, the court may modify prior custody decrees; however, the modification of a custody decree must be supported by findings of fact based on competent evidence that there has been a substantial change in circumstances affecting the welfare of the child, and the party moving for such modification has the burden of showing such change of circumstances. G.S. 50-13.7.

3. Parent and Child § 6— custody of child — right of parent not absolute

As a general rule in this State, parents have the natural and legal right to the custody, companionship, control, and bringing up of their infant children, and this right may not lightly be denied or interfered with by action of the courts; however, this right is not absolute, and it may be interfered with or denied for substantial and sufficient reasons, and is subject to judicial control when the interest and welfare of the children clearly require it.

4. Divorce and Alimony § 24— mother divested of custody of minor — changed circumstances — insufficiency of evidence

Evidence was insufficient to support the trial court's finding that there had been a substantial change of circumstances affecting the welfare of a minor from 7 June 1974, the date of the last order granting the mother custody, to 7 August 1974, the date of the order depriving her of that custody, or that there was convincing proof that plaintiff was an unfit person to have the custody of her son; therefore, the trial court erred in awarding custody of the minor to his older brother and his wife.

APPEAL pursuant to G.S. 7A-30(2) to review the decision of the Court of Appeals, reported in 24 N.C. App. 649, 211 S.E. 2d 825 (1975), which affirmed the order of *Alexander, J.*, at the 29 July 1974 Session of GUILFORD District Court.

This action was instituted 9 March 1973 when plaintiff-wife filed complaint seeking alimony without divorce, child cus-

tody and support, and counsel fees. The parties were married 21 November 1943, and five children were born of the marriage. They have been living separate and apart since 9 March 1973. Of the five children born of the marriage, only Timothy Joe Tucker (Timmy), born 8 December 1961, is subject to the custody jurisdiction of district court.

After a hearing on 27 April 1973, Judge Clark, in an order dated 20 August 1973, found that defendant had constructively abandoned plaintiff through his indignities toward her; that plaintiff had been a good mother to Timmy since the separation of the parties and had taken good care of him; that she is the fit and proper person to have custody and control of Timmy; and that she is entitled to child support. Judge Clark then ordered that custody of Timmy be vested exclusively in plaintiff subject to visitation privileges in defendant and that defendant make support payments and tender certain property to plaintiff.

On 5 October 1973, plaintiff filed with the court a motion and affidavit alleging that defendant, in willful contempt of the 20 August order, was keeping Timmy continuously in his custody. After hearing before Judge Haworth on 23 October 1973, that judge found that notwithstanding the terms and conditions of Judge Clark's order of 20 August 1973, defendant had willfully and without lawful excuse permitted Timmy to remain with him at all times since 27 April 1973. Judge Haworth further found that it was still in the best interest of Timmy that his primary custody be placed in the plaintiff, and ordered that defendant forthwith deliver the child to her. Defendant was adjudged in contempt and ordered confined to jail for twenty days, defendant to be relieved of such confinement however so long as he specifically complied with each provision set forth in the order.

On 7 March 1974, plaintiff filed a motion seeking an order directing defendant to show cause why he should not be sentenced to jail for willful contempt of the orders of 20 August 1973 and 23 October 1973, alleging that defendant had failed and refused to transfer certain property and to deliver custody of Timmy to plaintiff. Judge Clark heard the motion on 25 March 1974 and entered an order on 10 May 1974 finding as facts that the defendant was too irresponsible to have custody of Timmy and that his actions showed that he had no intention of complying with past orders. Judge Clark then ordered that

Tucker v. Tucker

defendant be confined to jail for willful contempt for thirty days, the order not to take effect, however, provided defendant complied with the conditions of that and previous orders.

On 24 May 1974, plaintiff moved for another show-cause order against defendant, alleging the willful noncompliance by defendant with prior court orders. Such motion was granted 28 May 1974 by Judge Alexander. At the hearing on 7 June 1974, Judge Alexander adopted the findings of facts contained in the three previous orders, modified property and visitation rights, ordered that plaintiff have custody of Timmy, and that defendant be confined to jail if he failed to comply with this and previous orders.

On 18 June 1974, plaintiff again moved for an order directing defendant to appear and show cause why he should not be sentenced to jail for his willful contempt in failing to comply with the prior orders regarding property disposition and custody of Timmy, and why he should not be denied visitation rights. On 8 July 1974, Judge Alexander directed that the matter be set for hearing on 29 July 1974 and directed further that the Departments of Social Services of Guilford and Rockingham Counties investigate the homes of both parents and all married children of the parties.

On 30 July 1974, Judge Alexander heard testimony of several witnesses and considered reports from the Departments of Social Services. The two daughters of the marriage testified that Timmy is happy living with his mother; that Timmy's mother could control him if he were left alone by his father; that they hate their father because of the way he has treated them and their mother; and that defendant has said no one is going to tell him what to do regarding Timmy. Plaintiff testified that Timmy had spent only six or seven nights at her home since the 7 June order because "his daddy told him he didn't have to listen to [her] and that he could do as he pleased." Three friends of plaintiff testified that she is a good Christian person and a fit and proper person to have custody of Timmy.

Clarence Michael Tucker, a son of the parties, testified that he has a six-year-old son, steady employment and a comfortable home, and that he and his wife are willing and able to properly supervise Timmy if given custody of him. Hilton Tucker, another son, testified that recently his mother became very angry at him when he sought to use some of the farm equipment in her

possession and that she told him to "forget that [he] was her son." He denied that her remarks were in response to comments by him that "she was crazy and . . . had no authority under the court [order] to use the farming equipment."

Investigations by social workers revealed that the mobile home of defendant was extremely cluttered but basically clean; that Mr. Tucker told a worker that plaintiff does not adequately supervise Timmy or provide him with food or clothing; that Timmy and his father share interests in athletics, raising dogs, and farming; that Timmy stated he wanted to live with his father because no one is ever at home at his mother's; and that the worker believes that defendant sometimes leaves Timmy inadequately supervised. A visit to the home of plaintiff revealed that it was neat and clean. Plaintiff stated that defendant has shown little interest in Timmy and has failed to give him adequate supervision. Defendant expressed his belief to social workers that plaintiff wants custody of Timmy as a way of hurting him. Plaintiff, to the contrary, stated that her husband was trying to get Timmy as a way of hurting her.

Visits to the homes of Hilton and Michael Tucker—sons of the parties—revealed that both sons are concerned about Timmy and that both have the means and inclination to take custody of him.

By order dated 7 August 1974, Judge Alexander found that the situation had deteriorated and that both plaintiff and defendant were totally unfit because of jealousy, vindictiveness, and emotional instability to have care and custody of Timmy, and that Clarence Michael Tucker, older brother of Timmy, and his wife are the most fit and proper persons to have custody of him. The court then ordered that Clarence Tucker and his wife be given custody of Timmy; that certain property of his parents be made available to provide support for him; and that the disposition of the contempt proceeding against defendant be reserved for further order of the court.

The Court of Appeals affirmed, with one member of the hearing panel dissenting. Plaintiff appealed.

*Younce, Wall and Suggs, by Adam Younce and Peter F. Chastain for plaintiff appellant.*

*No counsel contra.*

Tucker v. Tucker

MOORE, Justice.

Following the hearing on 30 July 1974, Judge Alexander found facts, in part, as follows:

"That the Court finds further that each [parent] has engaged in a course of conduct to consciously attempt to destroy the other and that the boy has been used by both as a tool to accomplish this result. . . . [T]hat neither of the parents are [sic] fit to have custody; that both the parties hereto are honorable people, and enjoy a good reputation, but custody in either of the parents under the present circumstances would be detrimental to the minor child and his emotional well-being."

Based upon her findings, Judge Alexander concluded as a matter of law:

"That neither Mamie Pauline Pegram Tucker nor Melvin Clarence Tucker, Jr. are [sic] fit and proper persons to have the care and custody of the minor child, Timmy Joe Tucker; that Clarence Michael Tucker and wife and Hilton Wayne Tucker are both fit and proper persons to have the care and custody of Timmy Joe Tucker, but that Clarence Michael Tucker and wife are the most fit and capable persons to have the care and custody of Timmy Joe Tucker; that it is for the best interest of said minor to grant custody to Clarence Michael Tucker and wife; that the Defendant, Melvin Clarence Tucker, Jr., is in contempt of Court as a matter of law."

Judge Alexander then ordered:

"1. The Court reserves the disposition of the Defendant for being in contempt of Court for further orders of the Court.

"2. That Clarence Michael Tucker and wife are given exclusive care and custody of Timmy Joe Tucker.

"3. That Clarence Michael Tucker and wife shall allow visitation by either of the parents at their pleasure, and at their convenience; that neither the Plaintiff nor the Defendant shall interfere with, harass or otherwise upset or bother Clarence Michael Tucker and wife in their exclusive custody of Timmy Joe Tucker.

"4. That the one-acre [sic] of tobacco and the proceeds therefrom shall be for the support of Timmy Joe Tucker.

"5. That this matter is retained for further Orders of this Court. This order is signed out of term by agreement of the parties."

The question presented by this appeal is whether there was sufficient evidence of change in circumstances affecting the welfare of Timmy to justify modification of the order of 7 June 1974 and other orders prior thereto, all of which placed him in custody of his mother, and to justify the order of 7 August 1974 which removed him from the custody of his mother and granted exclusive custody to Clarence Michael Tucker and his wife.

At the outset it should be noted that this matter was heard on 30 July 1974 on an order of the court, issued on motion of plaintiff, directing defendant to show cause why he should not be held in contempt for disobedience of former orders of the court granting plaintiff custody of her son. After this hearing, the court for the fourth time found defendant in contempt and in addition entered an order granting Clarence Michael Tucker and his wife custody of Timmy. Neither Clarence nor his wife was a party to this action. This order was based to a large extent upon two brief, written reports of social workers in Guilford and Rockingham Counties, neither of which contained statements of these workers that plaintiff was not a fit and proper person to have custody of her child. At the hearing several witnesses testified that plaintiff is a fine Christian woman and is a fit and proper person to have the custody of Timmy. Two other district court judges and Judge Alexander at a former hearing on this matter found this to be true. As late as 7 June 1974, Judge Alexander found: "The plaintiff is a fit, suitable and proper person to have the care, custody and control of Timmy and it would be in the best interest of and to the best interest of Timmy that he be in the exclusive care, custody and control of the plaintiff."

[1] Our Court has consistently held that the trial judge, who has the opportunity to see and hear the parties and the witnesses, is vested with broad discretion in cases involving the custody of children. *Blackley v. Blackley,* 285 N.C. 358, 204 S.E. 2d 678 (1974); *Swicegood v. Swicegood,* 270 N.C. 278, 154 S.E. 2d 324 (1967); *Hinkle v. Hinkle,* 266 N.C. 189, 146 S.E. 2d 73 (1966). The welfare of the child is the paramount

Tucker v. Tucker

consideration that must guide the court in exercising this discretion. *Blackley v. Blackley, supra; Stanback v. Stanback,* 266 N.C. 72, 145 S.E. 2d 332 (1965) ; *Thomas v. Thomas,* 259 N.C. 461, 130 S.E. 2d 871 (1963).

[2]   An order pertaining to the custody of the child does not finally determine the rights of parties as to the custody, care and control of a child, and when a substantial change of condition affecting the child's welfare is properly established, the court may modify prior custody decrees. G.S. 50-13.7. *Blackley v. Blackley, supra; Teague v. Teague,* 272 N.C. 134, 157 S.E. 2d 649 (1967) ; *In re Herring,* 268 N.C. 434, 150 S.E. 2d 775 (1966). However, the modification of a custody decree must be supported by findings of fact based on competent evidence that there has been a substantial change in circumstances affecting the welfare of the child, and the party moving for such modification has the burden of showing such change of circumstances. *Blackley v. Blackley, supra; Shepherd v. Shepherd,* 273 N.C. 71, 159 S.E. 2d 357 (1968) ; *Crosby v. Crosby,* 272 N.C. 235, 158 S.E. 2d 77 (1967). As stated by Justice Branch in *Shepherd v. Shepherd, supra,* at 75, 159 S.E. 2d at 361:

> "A decree of custody is entitled to such stability as would end the vicious litigation so often accompanying such contests, unless it be found that some change of circumstances has occurred affecting the welfare of the child so as to require modification of the order. To hold otherwise would invite constant litigation by a dissatisfied party so as to keep the involved child constantly torn between parents and in a resulting state of turmoil and insecurity. This in itself would destroy the paramount aim of the court, that is, that the welfare of the child be promoted and subserved.

> "We hold that there must be a finding of fact of changed conditions before an order may be entered modifying a decree of custody. . . . "

[3]   As a general rule in this State, parents have the natural and legal right to the custody, companionship, control, and bringing up of their infant children, and this right may not lightly be denied or interfered with by action of the courts. This right is not absolute, however, and it may be interfered with or denied for substantial and sufficient reasons, and is subject to judicial control when the interest and welfare of the children clearly require it. *Brake v. Mills,* 270 N.C. 441, 154 S.E. 2d

526 (1967) ; *Shackleford v. Casey,* 268 N.C. 349, 150 S.E. 2d
513 (1966) ; *Spitzer v. Lewark,* 259 N.C. 50, 129 S.E. 2d 620
(1963) ; *James v. Pretlow,* 242 N.C. 102, 86 S.E. 2d 759 (1955).
*See generally* 3 Lee, N. C. Family Law § 224 (3rd ed. 1963) ;
Annot., 31 A.L.R. 3d 1187.

[4] There is no evidence in this record of any substantial
change in conditions affecting the welfare of Timmy between 7
June 1974 and 7 August 1974. The friction between the parents
had existed from the date of the first custody order in 1973. In
fact, all of the evidence as to this friction and its effect on
Timmy indicates that the court, not plaintiff, should probably
bear the major responsibility. Four times defendant was cited
to show cause why he should not be held in contempt for dis-
obedience of the court's orders granting plaintiff custody of
Timmy. Four times and by three different district court judges
defendant was found to be in contempt and four times the court
did nothing to enforce compliance. It is no wonder that Timmy
failed to obey his mother. The court encouraged that disobedi-
ence by its failure to enforce its own orders. Even in the final
order removing Timmy from the custody of his mother, the
court again found that defendant had violated previous orders
and was in contempt, but again failed to take action to enforce
compliance.

One of the social workers who made an investigation at
Judge Alexander's request recognized that the failure of the
court to enforce its orders had aggravated the matter when she
reported to the court:

> "It is worker's impression that Timmy is indeed caught
> in the middle of his parents' marital problems. Since Mr.
> and Mrs. Tucker live so close to one another and *since previ-
> ous court orders seem to have been ineffective,* Timmy's
> placement in a brother's home or that of some other relative
> seems a viable avenue to consider at this point." (Empha-
> sis added.)

We agree that in view of the court's failure to act to en-
force its orders, Timmy's placement in his brother's home or
that of some other relative was a viable solution to consider.
However, we believe that a more viable solution would be for
the court to enforce its several orders finding defendant in con-
tempt by sentencing him to jail if necessary to assure compli-
ance with former orders and to prevent him from interfering
with plaintiff's custody of her child.

Tucker v. Tucker

Surely, a mother who on four occasions goes into court to ask that it enforce its orders granting her custody of her minor son deserves more consideration than to have an order entered by that court depriving her of the custody of that child. In *Spence v. Durham,* 283 N.C. 671, 198 S.E. 2d 537 (1973), Justice Sharp, now Chief Justice, quoted with approval from 2 Nelson, Divorce and Annulment § 15.09 (2d ed. 1961), as follows:

> "It is universally recognized that the mother is the natural custodian of her young. . . . If she is a fit and proper person to have the custody of the children, other things being equal, the mother should be given their custody, in order that the children may not only receive her attention, care, supervision, and kindly advice, but also may have the advantage and benefit of a mother's love and devotion for which there is no substitute. . . . "

We do not think that there was sufficient evidence to support a finding that there had been a substantial change of circumstances affecting the welfare of Timmy from 7 June 1974, the date of the last order granting the mother custody, to 7 August 1974, the date of the order depriving her of that custody, *see Blackley v. Blackley, supra;* or that there was convincing proof that plaintiff is an unfit person to have the custody of her son. *See James v. Pretlow, supra.*

For the reasons stated, the decision of the Court of Appeals is reversed and the case is remanded to that court with direction to remand to the District Court of Guilford County for entry of judgment reversing the order of that court granting Clarence Michael Tucker and his wife custody of Timmy Joe Tucker, and directing that court to enter an order returning the custody of Timmy Joe Tucker to his mother, the plaintiff herein, in accordance with the order entered by Judge Alexander on 7 June 1974, and with the further direction that the District Court of Guilford County proceed to dispose of the contempt proceedings against defendant in accordance with law.

Reversed and remanded.